**HILTON DAVIS CHEMICAL CO., Plaintiff–Appellee,**

v.

**WARNER-JENKINSON COMPANY, INC., Defendant–Appellant.**

No. 93–1088.

United States Court of Appeals, Federal Circuit.

June 12, 1997.

David E. Schmit, Frost & Jacobs, Cincinnati, OH, filed plaintiff-appellee's Response to Motion Concerning Proceedings on Remand From the Supreme Court. Of counsel were Martin J. Miller and Jayadeep R. Deshmukh.

J. Robert Chambers, Wood, Herron & Evans, Cincinnati, OH, filed for defendant-appellant the Motion Concerning Proceedings on Remand From the Supreme Court.

Before ARCHER, Chief Judge, RICH, Circuit Judge, COWEN, Senior Circuit Judge, NEWMAN, MAYER, MICHEL, PLAGER, LOURIE, CLEVENGER, RADER, SCHALL, and BRYSON, Circuit Judges.

## ORDER

PER CURIAM.

This case is back in this court on remand from the Supreme Court of the United States. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* — U.S. —, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). In *Warner–Jenkinson,* the Court reversed the judgment of this court and remanded the case stating:

> Because the Court of Appeals for the Federal Circuit did not consider all of the requirements as described by us today, particularly as related to prosecution history estoppel and the preservation of some meaning for each element in a claim, we reverse and remand for further proceedings consistent with this opinion.

*Id.* at —, 117 S.Ct. at 1054. We turn now to these issues and to the pending "motion" by Warner–Jenkinson suggesting that this court resolve this case.

### I. Prosecution History Estoppel

As noted by the Supreme Court, the claim of U.S. Patent No. 4,560,746 ('746 patent) was amended during prosecution by placing a lower pH limit of "approximately 6.0" on the purification process, but the prosecution history in the Patent and Trademark Office (PTO) does not reveal the reason for

including this limitation. —— U.S. at ——, 117 S.Ct. at 1051. In the interest of placing "reasonable limits on the doctrine of equivalents," the Supreme Court created a presumption, applicable in this case, that when a claim is amended, but the prosecution history does not reveal the reason for the change, it should be presumed that there was "a substantial reason related to patentability for including the limiting element added by amendment." *Id.* at ——, 117 S.Ct. at 1051. In that event, prosecution history estoppel would bar the application of the doctrine of equivalents as to that element (or claim limitation). *Id.* The Court held that placing this burden on the patentee furthers the definitional and notice functions of patent claims. *Id.*

 This presumption, however, is not absolute. It may be rebutted by the patentee by establishing that the reason for the amendment made during prosecution "had a purpose unrelated to patentability." *Id.* at ——, 117 S.Ct. at 1054. "The court then would decide whether that reason is sufficient to overcome prosecution history estoppel as a bar to application of the doctrine of equivalents to the element added by that amendment." *Id.* at ——, 117 S.Ct. at 1051. What reason is sufficient depends on the particular facts of the case. *See Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1219–20, 36 USPQ2d 1225, 1230 (Fed.Cir. 1995).

 Because of this presumption, we expect that the PTO and applicants will henceforth usually include in the prosecution history express statements of their reasons for requiring or making claim changes or interpretive assertions. Express recitations may not exist, however, in applications prosecuted prior to the Supreme Court's decision. *See Warner–Jenkinson,* —— U.S. at ——, 117 S.Ct. at 1055 (Ginsburg, J., concurring) ("Years after the fact, the patentee may find it difficult to establish an evidentiary basis that would overcome the new presumption."). Thus, we conclude that where the prosecution history is silent or unclear the district court should give a patentee the opportunity to establish the reason, if any, for a claim change. *See id.* (urging the Federal Circuit

to "bear[ ] in mind the prior absence of clear rules of the game"). We hesitate to specify the procedures that the district court can employ to answer the question posed by the newly created presumption of prosecution history estoppel. The better course is to allow the district court to use its discretion to decide whether hearings are necessary or whether the issue can adequately be determined on a written record. If the district court determines that a reason not related to patentability prompted an amendment, the court must then decide if that reason is sufficient to overcome estoppel. In conducting the inquiry, the Supreme Court has cautioned the courts to consider carefully the importance of public notice and reliance on the prosecution history, as well as the need for fairness to the patentee. *Id.* at ——, 117 S.Ct. at 1051 ("Mindful that claims do indeed serve both a definitional and a notice function, we think the better rule is to place the burden on the patent-holder.... The presumption we have described ... gives proper deference to the role of claims in defining an invention and providing public notice.").

Accordingly, we remand this case to the district court to conduct an inquiry to ascertain whether Hilton Davis can rebut the presumption by showing the reason for the amendment of the claim to place a lower pH limit of approximately 6.0 on the ultrafiltration process and whether that reason is sufficient to overcome the estoppel bar to the application of the doctrine of equivalents.

## II. The Preservation of Meaning of a Claim Element

The Supreme Court in its opinion also expressed concern that consideration had not adequately been given to the "preservation of some meaning for each element in a claim." *Warner–Jenkinson,* —— U.S. at ——, 117 S.Ct. at 1054. The Court stated:

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not

allowed such broad play as to effectively eliminate that element in its entirety. So long as the doctrine of equivalents does not encroach beyond the limits just described, or beyond related limits to be discussed infra, at 1047–1048, 1053, n. 8, and 1054–1055, we are confident that the doctrine will not vitiate the central functions of the patent claims themselves.

*Id.* at ——, 117 S.Ct. at 1049.

■ We have reconsidered the pH equivalence issue in light of the Supreme Court's guidance and hold that there is substantial record evidence to support the jury's verdict of equivalence. The '746 patent claim recites a pH range "from approximately 6.0 to 9.0." Warner–Jenkinson performed the process using a pH of 5.0. Although there is nothing in the written description part of the specification to indicate that the invention extends beyond the specific range given in the claim, there is substantial record evidence to prove that one of ordinary skill in the art would know that performing ultrafiltration at a pH of 5.0 will allow the membrane to perform substantially the same function in substantially the same way to reach substantially the same result as performing ultrafiltration at 6.0.[1] In this regard, Dr. Cook, one of the inventors, testified that the process would work to separate the dye from the impurities at pH values as low as 2.0 (albeit with foaming). Moreover, Warner–Jenkinson's expert testified that the Hilton Davis process would operate at a pH of 5.0. The jury's finding that the accused process with a pH of 5.0 is equivalent to the claimed process with a lower limit of approximately 6.0 does not therefore vitiate the claim limitation. Accordingly, assuming prosecution history estoppel does not preclude such a finding, we reaffirm our prior decision that a pH of 5.0 is equivalent to a pH of "approximately 6.0" in the context of the claimed process.

### III. The Motion of Warner–Jenkinson

■ Warner–Jenkinson suggests that this court can resolve this case without remand to the district court because of Hilton Davis' record "admissions" allegedly made during argument before this court and the Supreme Court to the effect that there was no reason for the claim amendment made to establish the low end of the pH scale. If these statements were truly factual admissions, then Hilton Davis should be held to those admissions, even though an intervening change in the law has made them more relevant. However, it is not clear to us that Hilton Davis' statements were factual admissions at all. Rather, they may simply have been representations that the record, as developed prior to submission of this case, did not reflect any reason for the change, or representations that the administrative record of the PTO proceedings did not expressly recite any reason for the amendments. Such statements merely characterize the state of the record, not the state of facts. Given the change in law, it would be unfair at this stage of the case to apply Hilton Davis' statements against it or estop it from augmenting the record to show the reason for the claim amendment based on other facts that may be available. We remand to the district court to determine what significance, if any, to accord Hilton Davis' statements.

*REMANDED.*

---

1. The significance of a change in pH depends on the context, as recognized by the Supreme Court. *See Warner–Jenkinson,* —— U.S. at —— n. 1, 117 S.Ct. at 1045 n. 1. We observe, however, that the pH number is derived from hydrogen ion concentration, and a one unit change in pH states a ten-fold difference in hydrogen ion concentration, rather than literally indicating a ten-fold difference in "acidity."