**AHLSTROM MACHINERY,
INC., Plaintiff,**

v.

**Jean Marie CLEMENT, Defendant.**

**No. CIV.A. 942234(JR).**

United States District Court,
District of Columbia.

July 17, 1998.

Robert A. Vanderhye, Nixon & Vanderhye P.C., Arlington, VA, for Plaintiff.

Michael F. Urbanski, William B. Poff, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, Lawrence M. Green, Wolf, Greenfield & Sacks, P.C., Boston, MA, for Defendant.

## *MEMORANDUM*

ROBERTSON, District Judge.

Kamyr Inc., now Ahlstrom Machinery, Inc. ("AMI") sued Jean Marie Clement for a declaratory judgment that two waste paper recycling plants it had built did not infringe Clement's process patent 4,780,179 (the " '179 patent"). Clement counterclaimed for infringement. Summary judgment was entered in Kamyr's favor on January 31, 1997, 952 F.Supp. 12, and Clement appealed. On January 12, 1998, the United States Court of Appeals for the Federal Circuit reversed and remanded with directions (No. 97–1262, 1998 WL 15223 at *1). On remand, AMI renewed the motion for summary judgment. By agreement of the parties, oral argument on that motion and a *Markman* hearing were held together on July 2, 1998.

AMI contends that the process used in the two plants it designed and built do not infringe the '179 patent for all (or any) of the

following reasons: because the initial step of the AMI process is performed at temperatures well above the "room temperature" specified by the '179 patent (Step A); because the AMI process cleans and screens downstream from the disperser, unlike the '179 patent process, which removes "substantially all" non-ink contaminants before dispersal (Step B); because the AMI process applies only the mechanical energy of an MDR® frotopulper and does not apply the '179 patent's "simultaneous actions" of high temperature, intense mechanical energy, and a chemical agent (Steps C and D); and because pulp residence times in the AMI process are not within the 2- to 10-minute range specified by the '179 patent (Step E).

I am instructed on this remand (1) to construe each of the patent claims with respect to these steps, (2) to determine whether Clement's allegations of literal infringement are viable, and (3) to analyze AMI's assertions of prosecution history in light of *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) ("*Hilton II*"). If all of Clement's claims survive this process, then a jury must decide whether the AMI process infringes the '179 patent, either literally or because the "function, way and result" of the AMI process are essentially the same as those of the '179 patent. *See Markman v. Westview Instruments,* 517 U.S. 370, 384, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) ("*Markman II*").

In compliance with the direction of the Court of Appeals, I have construed each of the four claims, determined whether (and explained why) each one was literally infringed or not, and analyzed the prosecution history estoppel issues in light of *Hilton II* and *Hilton III.* I have concluded, for the reasons set forth below, that plaintiff's renewed motion for summary judgment must be granted. Clement's claims of infringement with regard to step A and Step E of the '179 patent are barred as a matter of law.

---

**1.** Stickies are non-ink contaminants that have low melting points, such as binders and plastics. *Kamyr I,* 952 F.Supp. at 13 n. 2.

*Step A—"room temperature"*

*(1) Claim construction*

■ A patent claim is to be construed as it would be understood by a person of ordinary skill in the art at the time of the invention. *Markman I,* 52 F.3d at 986. The construing court must look first to "intrinsic evidence," *Vitronics Corp. v. Conceptronic Inc.,* 90 F.3d 1576, 1584 (Fed.Cir.1996) comprising the specification, claims, drawings, and file history, *Markman I,* 52 F.3d at 979. "Extrinsic evidence" should not be used unless intrinsic evidence alone is insufficient to resolve ambiguity, and is to be used in any event only to assist the trial court's understanding of the patent, and not to vary or contradict the terms of the claims. *Vitronics,* 90 F.3d at 1583–1584.

■ The '179 patent does not explicitly define the term "room temperature." AMI asserts on the basis of a dictionary definition that "room temperature" is a technical term with a precise meaning of 20°25°C (68°–77°F). Pltf. Mot. at 17–18, Tr. at 20. Clement asserts on the basis of an expert's declaration that "room temperature" is "approximately . . . the range of temperatures found in a pulping room but below the melting point of the 'stickies.' "[1] Def. Opp'n. at 39; Forester Decl. at ¶ 10.

The specification, claims, drawings and file history of the '179 patent contain no probative intrinsic evidence as to the meaning of "room temperature." It is true, as Clement asserts, that the claim specification does not specify a hard numerical range, instructing only that pulping be accomplished at temperatures below the melting point of the non-ink contaminants. But Clement has cited no doctrine providing that a claim limitation is to be construed by the broadest terms in its specifications.

Nor does the prosecution history support Clement's argument that "room temperature" should be construed to include temperatures as high as 45°C (113°F).[2] The ar-

---

**2.** Prosecution history is evaluated twice during the infringement analysis. During the claim construction stage, the prosecution history is evaluated to see if the prosecution history indicates how ambiguous terms were meant to be used,

gument is that (a) during the prosecution of the '179 patent, Clement described Ortner's process as performing at room temperature; (b) there is evidence that Ortner's process operates at 45°C (113°F); and therefore (c) "room temperature" includes 45°C (113°F). Def. Opp'n. at 41; Tr. at 49–50 (Citing Ex. 2–64, 2–112). That syllogism, of course, is faulty. Clement was attempting to *distinguish* his process from Ortner. *See* text accompanying note 3, *infra*. Moreover, he does not allege that his description of Ortner's process was accepted or even considered by an examiner or a court. His characterization of a process of prior art as occurring at "room temperature" cannot be allowed to define the term.

The extrinsic evidence is not powerful either. The only expert testimony is the declaration of Mr. Forester. The court has broad discretion to use expert testimony, *Markman I*, 52 F.3d at 983, but may not use it to contradict or vary terms that have been unambiguously defined by the intrinsic evidence. *Id.* at 981. Mr. Forester's declaration does not establish the ordinary meaning of the term "room temperature" to one skilled in the art. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1578 (Fed.Cir.1996). Indeed, Mr. Forester states that he is not aware of any "specific technical meaning in the pulping and paper industry." His own view that the term means the temperature of the room in which pulping or de-inking occurs, Forester Decl. at ¶ 10, is not persuasive. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1577 (Fed.Cir.1995).

Dictionary definitions are usually considered "extrinsic evidence"; judges may rely on them when construing claim terms, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Vitronics*, 90 F.3d at 1584 n. 6; *see also, Universal Oil Products Co. v. Globe Oil & Refining Co.*, 40 F.Supp. 575, 582 (N.D.Ill. 1941). AMI's dictionary definition is the best of the weak evidence in this record as to the

meaning of "room temperature." Clement asserts that AMI's citation to a chemical dictionary is inappropriate because the '179 patent is industrial rather than chemical, Def. Opp'n. at 40; Tr. at 46, but Clement presents no alternative dictionary definition (industrial or otherwise) that more suitably interprets the '179 patent.

The term "room temperature" is construed to mean 20°25°C (68°–77°F).

### (2) *Literal Infringement*

■ Clement does not allege that either of the AMI-built facilities uses a Step A temperature within the range of 20°25°C. There is no genuine issue of material fact as to whether or not AMI's process operates at a temperature of less than 25°C. The lowest temperature calculated at either AMI plant was 33°C (93°F). Def. Opp'n. at 43. The claim of literal infringement as to Step A must be dismissed.

### (3) *Prosecution history*

■ Even if there is no literal infringement, Clement argues that he is entitled to a jury trial on his claim that the initial temperature of the AMI process is equivalent to "room temperature." AMI's response is that the "room temperature" limitation may not be expanded beyond its literal scope because of prosecution history estoppel. *Southwall*, 54 F.3d at 1579.

In *Kamyr I*, 952 F.Supp. at 17, relying upon *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed.Cir.1995), I determined that Clement adopted the term "room temperature" to overcome the vagueness of the term "low temperature," not to avoid prior art. The Supreme Court's subsequent decision in *Hilton II* requires a different analysis, however. Courts must now apply the presumption that ambiguous claim amendments do address prior art. *Hilton II*, 117 S.Ct. at 1051. That presumption is rebuttable, *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.*, 114 F.3d 1161, 1163 (Fed.

---

*Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed.Cir.1995), although at this stage its use is limited to "exclud[ing] any interpretation that was disclaimed during prose-

cution." *Id.*, at 1576. Once the claim has been construed, prosecution history is again evaluated to consider whether and how the range of equivalents has been limited. *Id.* at 1578.

Cir.1997) ("*Hilton III*"). The question in this case is whether the presumption is rebutted by Clement's claim that the "room temperature" amendment was enacted only for the sake of precision.

On this question, Clement is foreclosed by his own unsuccessful attempt to broaden the "room temperature" limitation. In 1990, asserting that his claim in the '179 patent was unduly limited by the reference to "room temperature," he filed a reissue application to broaden his claim so that it would read "temperature below the melting point of the non-ink contaminants." The examiner rejected the application, the Board of Patent Appeals and Interferences sustained the rejection, and, on December 12, 1997, the United States Court of Appeals for the Federal Circuit affirmed. *In re Clement*, 131 F.3d 1464 (Fed.Cir.1997). It has long been established that a patentee may not recapture subject matter surrendered to overcome prior art during the prosecution of the original patent. *Id.* at 1468. The Federal Circuit ruling was that Clement's reissue claim "is broader in that it eliminates the room temperature ... limitations of step (a) .... This broadening directly relates to several prior art rejections because, *in an effort to overcome Ortner*, Clement added to step (a) the limitation that it is carried out 'at room temperature.'" *Id.* at 1470 (emphasis added).[3] The Federal Circuit's holding is conclusive of the question of prosecution history estoppel and bars Clement's claim of Step A equivalency.

*Step B—"substantially all" non-ink contaminants*

**(1)** *Claim construction*

■ The Federal Circuit has construed this claim "to require removing substantially all the non-ink contaminants including the stickies before the occurrence of steps (c) and (d), during which ink is dispersed." *Kamyr II*, 1998 WL 15223 *5. The meaning of the phrase "substantially all" may still be uncertain, but AMI does not advance any particular interpretation on this renewed motion for summary judgment. In any event, Clement's proposal to use a dictionary defini-

tion of "substantially" is sound and essentially unopposed. "Substantially all" is accordingly construed to mean "largely but not wholly that which is specified." Def. Opp'n. at 15 (quoting *Webster's New Collegiate Dictionary* (1980)); *see also, York Products, Inc. v. Central Tractor Farm and Family Center*, 99 F.3d 1568, 1572 (Fed.Cir.1996).

**(2)** *Literal infringement*

■ Whether the AMI process removes "substantially all" non-ink contaminants prior to dispersal would be a jury issue, if the case were not disposed of by summary judgment.

**(3)** *Prosecution history*

The Federal Circuit has ruled that prosecution history estoppel does not apply to this claim. If the renewed motion for summary judgment were not dispositive, accordingly, the question whether the AMI process is equivalent to the '179 patent with respect to pre-disperser removal of non-ink contaminants would be for the jury. *Kamyr II*, 1998 WL 15223 at *5; *see Seattle Box Co. Inc. v. Industrial Crating & Packing Inc.*, 731 F.2d 818, 829 (Fed.Cir.1984)(jury to decide whether blocks 1/4″ less than diameter of reference pipe are substantially equal to diameter of that pipe).

*Steps C and D—"simultaneous actions" of high temperature, intense mechanical energy, and chemical agent.*

**(1)** *Claim construction*

■ Construction of this claim requires that the term "simultaneous actions" be defined. *Markman I*, 52 F.3d at 967. Clement's undisputed suggestion is that "simultaneous" be construed according to its plain meaning: "[h]appening, existing or done at the same time." Def. Opp'n. at 29 (citing *The American Heritage Dictionary*, 2nd College Ed.). The disputed question is *what* must happen or be done at the same time. AMI argues that the "simultaneous action" limitation requires all three type of energy to be added at the same time. Tr. at 27. Clement responds that the limitation requires only that the pulp be subjected simul-

---

3. Defendant conceded as much at oral argument. Tr. at 73.

taneously to the three types of energy at some point during dispersal. Tr. at 59–60.

Clement's interpretation is the proper one, because it is consistent with the plain meaning of the words. Step D instructs "detaching of the ink particles from the surface of the fibers ... by submitting the second fibrous suspension to the simultaneous actions of (A) high temperatures between 85° and 130° C, (B) high shear forces substantially corresponding to a specific mechanical energy of more than 50 K.W.H/Ton ... and (C) at least one chemical dispersing agent ..." Ex. Q, Col. 13, 11. 24–41. That language is silent as to when each energy element must be added to the mix. If, as Clement suggests, an active dispersing agent is present in the frotopulper at the same time the threshold heat and mechanical energy levels are also met, "simultaneous action" has been achieved.

#### (2) *Literal infringement*

█ Whether the three types of energy are present in the AMI process at the levels required by the claim, and whether they act on the suspension at the same time, would be questions for a jury.

#### (3) *Prosecution history*

█ AMI advances the argument that the "high temperature" component of the "simultaneous action" limitation may not simply be a byproduct of the mechanical energy of the frotopulper. Rather, AMI contends, the thermal energy must be independently added, for example, by pumping steam into the slurry. Pltf. Mot. at 23. AMI asserts further that Clement made this argument while trying to overcome Eriksson's patent, and that prosecution history estoppel now bars him from contradicting his earlier position. *Id.*

Clement's argument to the examiner was that the Eriksson patent "provides for the application of just one type of energy (mechanical) while the increase in temperature is only due to the internal mechanical friction ..." Pltf. Mot. at 24 (citing Ex. 2–67). The question is whether that statement was a "[c]lear assertion[ ] made during prosecution in support of patentability, whether or not

actually required to secure allowance of the claim[s]," giving rise to an estoppel. *Southwall*, 54 F.3d at 1583. *Southwall* does stand for the proposition that an estoppel can arise from statements that were not necessarily dispositive of the approval of the patent, but it does not mean that any and every statement made by the patentee during prosecution is an estoppel. Here, rather like his statement about the temperature of Ortner's process, *supra*, Clement's statement was a characterization of another process. The examiner "may never have agreed" with that characterization (Tr. at 30). No estoppel is raised by the statement.

*Step E—"2– to 10–minute" residence time*

#### (1) *Claim construction*

There is no dispute between the parties about the proper construction of this claim. The meaning of "residence time of 2–10 minutes" is plain.

#### (2) *Literal infringement*

The Federal Circuit held that the claim of literal infringement as to this claim was waived. *Kamyr II*, 1998 WL 15223 at *6 n. 1.

#### (3) *Prosecution history*

█ Residence times of 83 seconds and 49 seconds were measured at the Kieffer plant and the AMR plant, respectively. *Kamyr I*, 952 F.Supp. at 16. Clement asserts that these residence times infringe the specified range in Step E of the '179 patent by equivalency. Pltf. Mot. at 6. AMI responds that Clement is estopped to pursue his claim of equivalency because he set the lower limit of two minutes to distinguish his claims from prior art. I rejected that argument in *Kamyr I*, finding no evidence that either Clement or the examiner ever addressed residence times of less than two minutes. 952 F.Supp. at 17; *see Pall*, 66 F.3d at 1219.

That determination did not give AMI the benefit of the presumption subsequently created by *Hilton II*, nor did it give Clement the opportunity to rebut the presumption, as provided by *Hilton III*, 114 F.3d at 1163. The claim originally used the phrase "less

than ten minutes" *and* the phrase "between two to minutes." At some point during the prosecution, Clement removed all references to "less than ten minutes." Tr. at 45. That change gives rise to the *Hilton II* presumption of an estoppel. By way of rebuttal, Clement now asserts that the "less than ten minutes" limitation was removed, not to distinguish prior art, but to preempt a § 112(2) rejection by the patent examiner. Tr. at 36.[4] Clement presents neither evidentiary nor case support for his theory that "two to ten minutes" was mandated by § 112(2). Indeed, it appears that the Patent Office never objected to the term "less than ten minutes." Tr. at 14. Clement asserts his right to a jury trial on his proffered rebuttal of the *Hilton II* presumption, Tr. at 34–35, but his assertion must be rejected. If Clement had evidence to support his rebuttal theory, he should have presented it at the *Markman* hearing. He has neither adduced evidence nor pointed to anything in the existing record that raises a genuine issue of material fact on this point. *See Hilton III,* 114 F.3d at 1163 (Fed.Cir.1997) (a district court may evaluate the patentee's rebuttal argument based on the written record alone).

Clement's final argument is that, even if there is a prosecution history estoppel, he is entitled to argue that certain residence times of less than two minutes are not barred. This argument relies primarily on *Litton Systems Inc. v. Honeywell Inc.,* 140 F.3d 1449, 46 USPQ 2d 1321 (Fed.Cir.1998), and is rejected. *Litton* noted that the "application of prosecution history estoppel does not necessarily limit a patentee to the literal language of the amendment element." 140 F.3d 1449, 46 USPQ 2d. at 1326. The point of *Litton* is that, in some situations, absolute preclusion by way of estoppel would be inequitable. *See Dixie USA, Inc. v. Infab Corp.,* 927 F.2d 584, 588 (Fed.Cir.1991). The scope of an estoppel may be an appropriate question in some cases, *compare Hughes Aircraft Company v. United States,* 717 F.2d 1351, 1362–63 (Fed.Cir.1983), but—unless the progression of case law from *Pall Corp.* to *Hil-*

ton II to *Hilton III* to *Litton* is to be a continuous loop—the line must be drawn somewhere. An unambiguous range of between zero and two minutes seems a good place to draw it. *See Southwall,* 54 F.3d at 1580. In any event, Clement's proposition that a motion for summary judgment may be defeated by asserting factual issues regarding the scope of an estoppel is simply wrong. *LaBounty Mfg. Inc., v. United States Int'l Trade Comm'n,* 867 F.2d 1572, 1576 (Fed. Cir.1989). ("The application of prosecution history estoppel is a question of law....")

\*     \*     \*     \*     \*     \*

An order consistent with this memorandum was entered July 15, 1998.

### ORDER

For reasons that will be explained in an opinion to follow, plaintiff's renewed motion for summary judgment [# 61] is granted. So ordered this 15th day of July, 1998.

---

4. Clement's written submission, Def. Opp'n. at 36, argued that the two minute limitation was added because 35 U.S.C. § 112(1) requires that claims reflect the patent specification. *See Gen-*

*try Gallery Inc. v. Berkline Corp.,* 134 F.3d 1473, 1479 (Fed.Cir.1998). That position was abandoned at oral argument. Tr. at 36.