564 S.E.2d 167

CNG TRANSMISSION CORPORATION,
a West Virginia corporation, Petitioner
below, Appellant,

v.

Rebecca Melton CRAIG, as Tax Commissioner of the State of West Virginia
Respondent below, Appellee.

No. 29996.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 16, 2002.

Decided April 26, 2002.

David K. Higgins, Esq., Paul G. Papado-poulos, Esq., Robinson & McElwee, PLLC, Charleston, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Joy M. Bolling, Assistant Attorney General, Charleston, for Appellee.

STARCHER, Justice.

In this appeal from the Circuit Court of Harrison County, appellant CNG Transmission Corporation ("CNG") challenges the circuit court's ruling upholding assessments against CNG for consumer sales taxes imposed by the Tax Commissioner of the State of West Virginia ("Tax Commissioner"). The taxes were assessed upon CNG's purchase of goods and services that were used in the transmission of natural gas owned by CNG.

After careful consideration, we reverse the circuit court's ruling, and find that the statutes in effect at the time of CNG's purchases

exempted the purchase of goods and services used in the transmission of natural gas from the consumer sales tax, whether or not CNG owned the natural gas that was being transmitted.

## I.

### Facts & Background

The instant case involves the interpretation of several tax statutes [1] that exempt companies in the business of the "transmission" of natural gas through a pipeline from paying consumer sales tax on the purchase of goods and services that are used to conduct that business. The Tax Commissioner disputes CNG's claim to have the status of a company in the business of transmission.

Between January 1986 and September 1993, CNG was engaged in the business of transporting natural gas through its pipeline system, both within and without the State of West Virginia. CNG was also in the business of making wholesale sales of "company-owned" natural gas that CNG bought from other suppliers.[2] To sell this company-owned natural gas, CNG would transport the natural gas to a subsequent purchaser through its pipeline system.

The Tax Commissioner, in an audit of CNG's records, found that between January 1, 1986, and September 30, 1993, from 5% to 13% of the natural gas flowing through CNG's pipelines was company-owned; the remaining 87% to 95% of the natural gas belonged to other companies.[3] The Tax Commissioner took the position that the transportation of company-owned natural gas *for sale to others by CNG* could not to be included in the statutorily tax-exempt activity of "transmission." The Tax Commissioner concluded that, between 1986 and 1993, CNG should have paid sales tax on 5% to 13% of all goods and services purchased and used to transport natural gas through CNG's pipelines.[4] With the addition of interest, on February 25, 1998, CNG was assessed with a total sales tax liability of $266,601.94.

After receiving notification of the tax assessment, CNG paid the tax liability and timely filed a petition for reassessment. By a decision dated February 22, 2000, an Administrative Law Judge ("ALJ") found that CNG was liable to the State of West Virginia for taxes related to the purchase of goods and services used in connection with its transportation of company-owned natural gas between January 1, 1986, and September 30, 1993. CNG subsequently sought judicial review of the decision in the Circuit Court of Harrison County. In an order dated January 22, 2001, the circuit court affirmed the ALJ's ruling.

CNG now appeals the circuit court's order.

## II.

### Standard of Review

■ The parties agree that this case involves the interpretation of several tax statutes and presents a pure question of law. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

1. The relevant statutes, and regulations by the Tax Commissioner to implement the statutes, are discussed in detail in Section III, *infra*.

2. At issue in the instant case is "company-owned" or "wholesale" gas, which is natural gas that the company purchased from a supplier or an upstream pipeline. CNG would take actual title to the natural gas and then subsequently resell it. However, the term does not include gas produced by CNG from wells which it owned.

3. After September 30, 1993, pursuant to FERC Order 636, CNG ceased carrying any company-owned natural gas across and through its pipeline system.

4. The items deemed partially taxable by the Tax Department include goods such as pipes, valves, gauges and pressure controllers, and services such as aerial monitoring, oil analysis and road repair. The tax examiner concluded that, varying from year to year, between 5% and 13% of the total price of the goods and services purchased were not exempt from sales taxes. The tax statutes support the Tax Commissioner's authority to apportion taxes between exempt and non-exempt purchases in this manner. *See W.Va.Code*, 11–15–9e [1987].

## III.

### *Discussion*

At issue in the instant case is the Tax Commissioner's interpretation of several statutes, in effect between January 1986 and September 1993, that exempted from the consumer sales tax goods and services that were purchased and directly used or consumed in the business of the "transmission" of natural gas.

The first statute, *W.Va.Code*, 11–15–9(7) [1985] [5], was effective between January 1, 1986, and June 30, 1987, and provided the following exemption from the consumer sales tax:

> Sales of property or services to persons engaged in this state in the business of ... transmission ... Provided, That the exemption herein granted shall apply only to services, machinery, supplies and materials directly used or consumed in the businesses or organizations named above, and shall not apply to purchases of gasoline or special fuel[.]

This statute did not specifically define the term "transmission," nor did the regulations enacted by the Tax Commissioner define or limit the term "transmission." Furthermore, no language was contained in either the statute or the Tax Commissioner's regulations regarding the transportation of *company-owned natural gas* by the owner of the transmission business.

Effective July 1, 1987, the Legislature substantially altered the relevant tax statutes, and enacted changes that remained in effect through 1993. The statute above was changed to *W.Va.Code*, 11–15–9(g) [1987], [6] and was amended to read as follows:

> The following sales and services shall be exempt [from the consumer sales tax]: ...
>
> (g) Sales of property or services to persons engaged in this state in the business of ... transmission ... Provided ... the exemption provided in this subsection shall apply only to services, machinery, supplies and materials directly used or consumed in the activities of ... transmission ... in the businesses or organizations named above and shall not apply to purchases of gasoline or special fuel[.]

Additionally, the Legislature, in *W.Va.Code*, 11–15–2(r) [1987], [7] defined the term "transmission" as follows:

> "Transmission" shall mean the act or process of causing ... natural gas ... to pass or be conveyed from one place or geographical location to another place or geographical location through a pipeline or other medium for commercial purposes.

The language contained in these two statutes was in effect through the remainder of the relevant time period in this case.

Pursuant to these statutes, the Tax Commissioner enacted various regulations that were in effect between July 1, 1987, and April 30, 1992. Those regulations essentially restated the statutory definition of "transmission" as the "act or process of causing ... natural gas ... to pass or be conveyed from one place ... to another place ... through a pipeline[.]" [8] The regulations, like the stat-

---

**5.** *W.Va.Code*, 11–15–9(7) was passed by the Legislature in 1985, and was amended in 1986. The pertinent language remained the same in both statutes. *See 1985 Acts of the Legislature*, ch. 115; *1986 Acts of the Legislature, First Extraordinary Session*, ch. 22.

**6.** This statute was revised twice in 1989, twice in 1990, and again revised in 1991, 1992, and 1993. *See 1989 Acts of the Legislature*, ch. 201; *1989 Acts of the Legislature, First Extraordinary Session*, ch. 2; *1990 Acts of the Legislature*, ch. 175; *1990 Acts of the Legislature, Third Extraordinary Session*, ch. 5; *1991 Acts of the Legislature*, ch. 164; *1992 Acts of the Legislature*, ch. 207; and *1993 Acts of the Legislature*, ch. 156. The statute has been revised several times since, and may now be found at *W.Va.Code*, 11–15–9(b)(2)

[2001]. However, no amendments have been made that affect the instant case.

**7.** This statute has been revised several times, and may now be found at *W.Va.* Code, 11–15–2(w) [2001]. No amendments have been made that affect the instant case.

**8.** The sales and use tax regulations in effect from July 1, 1987, to June 1, 1988, contained virtually the same definition of "transmission" as was contained in the statutes. 110 C.S.R. 15, § 2.31 [1987], stated, in pertinent part:

> "Transmission" means the act or process of causing ... natural gas ... to pass or be conveyed from one place or geographical location to another place or geographical location through a pipeline or other medium for commercial purposes.

ute, were again silent concerning the transportation of *company-owned natural gas* by the owner of the transmission business.

Regulations that were legislatively approved and which became effective on May 1, 1992, addressed this issue for the first time, and specifically provided that the tax-exempt business of "transmission" did not include the transport of company-owned natural gas. Specifically, 110 C.S.R. 15, § 123.4.4 [1992] was amended to read as follows, in part and with emphasis on the amendments:

> *Transmission.*—The activity of transmission means the act or process of causing ... natural gas ... to pass or be conveyed *for others* for consideration from one place or geographical location through a pipeline or other medium for commercial purposes *but does not include the passage or conveyance of ... natural gas ... by the owner thereof.*

The Tax Commissioner contends that the statutory and regulatory definitions of "transmission" have remained materially the same over the January 1986 to September 1993 assessment period, and contends that in none of the definitions is there any indication that CNG is entitled to an exemption for conveying company-owned natural gas.

■ The Tax Commissioner argues that the tax exemption contained in *W.Va.Code*, 11–15–9(7) [1985] and *W.Va.Code*, 11–15–9(g) [1987] applies only to companies in the "business" of transmission, with the "transmission" done for "commercial purposes." When a company transports natural gas owned by another, and charges a fee for the transportation service, the company is engaged in the business of transmission for a commercial purpose. However, the Tax Commissioner argues that when a company transports company-owned natural gas

through a pipeline, the transportation service is merely incidental to the subsequent sale of the gas to a purchaser—the commercial purpose of the transaction is to sell natural gas for a profit, not to transport natural gas. Accordingly, the Tax Commissioner argues that the "transmission" of company-owned natural gas is not done for a commercial purpose, and is therefore not a tax-exempt activity.

Appellant CNG, however, argues that the Tax Commissioner has—particularly through the regulations adopted in 1992—ignored the statutory definition of "transmission." CNG takes the position that "transmission" means any act of conveying natural gas through a pipeline for a commercial purpose, and argues that when CNG conveys natural gas along its pipeline to a customer—whether the gas is company-owned or owned by another person—CNG charges the customer for the transportation costs incurred. Accordingly, CNG posits that its purchases of pipe, valves, gauges and other goods and services directly used or consumed in the operation of its interstate pipeline are used in its "transmission" business, and that those purchases are exempt from sales taxes. We agree with CNG's position.

The essence of CNG's argument is that the meaning of the word "transmission" in the statutes is clear and unambiguous, but that the Tax Commissioner has altered that definition through regulations and interpretation. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *In accord*, Syllabus Point 1, *Peyton v. City Council of Lewisburg*, 182 W.Va. 297, 387

---

An emergency rule was made effective on June 1, 1988, which slightly altered the definition of "transmission." 110 C.S.R. 15, § 2.32 [1988] stated, in pertinent part:

> "Transmission" means the act or process of causing ... natural gas ... to pass or be conveyed for consideration from one place or geographical location to another place or geographical location through a pipeline or other medium for commercial purposes.

New regulations were promulgated effective May 1, 1989. One regulation, 110 C.S.R. 15, § 2.92

[1989], used the same definition of "transmission" as was contained in the 1988 emergency rule. Another regulation, 110 C.S.R. 15, § 123.4.4 [1989], contained a different definition:

> *Transmission*—The activity of transmission means the act or process of causing ... natural gas ... to pass or be conveyed from one place or geographical location through a pipeline or other medium for commercial purposes.

S.E.2d 532 (1989); Syllabus Point 2, *Mallamo v. Town of Rivesville*, 197 W.Va. 616, 477 S.E.2d 525 (1996).

■ As a rule of statutory construction, we have repeatedly held that:

Any rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute.

Syllabus Point 4, *Maikotter v. University of W.Va. Bd. of Trustees*, 206 W.Va. 691, 527 S.E.2d 802 (1999). We held similarly in Syllabus Point 3 of *Rowe v. W.Va. Dept. of Corrections*, 170 W.Va. 230, 292 S.E.2d 650 (1982) that:

It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority.

*See also, Anderson & Anderson Contractors, Inc. v. Latimer*, 162 W.Va. 803, 807–08, 257 S.E.2d 878, 881 (1979) ("Although an agency may have power to promulgate rules and regulations, the rules and regulations must be reasonable and conform to the laws enacted by the Legislature."). In sum, "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syllabus Point 1, *Consumer Advocate Div'n v. Public Service Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989). The judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute. *See Appalachian Power Co. v. State Tax Dept. of W.Va.*, 195 W.Va. 573, 589 n. 19, 466 S.E.2d 424, 440 n. 19 (1995) (*quoting INS v. Cardoza–Fonseca*, 480 U.S. 421, 447–48, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434, 457–58 (1987), *quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694, 703 n. 9 (1984)).

■ In the instant case, the statutory provisions are clear. *W.Va.Code*, 11–15–9(7) [1985] plainly exempted purchases directly used to support the act of "transmission" from sales taxes. While "transmission" was not defined, we have long held that:

In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.

Syllabus Point 1, *Miners in General Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982). The common, ordinary meaning of "transmit" is "to send or transfer from one person or place to another ...", *Black's Law Dictionary* 1344 (5th Ed.1979), and "to send from one person, thing or place to another; convey ...", *The American Heritage Dictionary (Second College Ed.)* 1288 (1982). We therefore conclude that, in enacting the 1985 version of the statute, the Legislature intended to exempt from the consumer sales tax any purchase of goods or services made to support the act of sending or transferring natural gas from one place to another—regardless of who owned the natural gas.

■ Similarly, in 1987 the Legislature specifically adopted a definition of "transmission" which mirrored that found in dictionaries. *W.Va.Code*, 11–15–2(r) [1987] defined "transmission" as passing or conveying natural gas "from one place or geographical location to another place or geographical location through a pipeline" for commercial purposes. We find no limitation in this statutory exemption that prohibits its application to the conveyance of natural gas that is owned by the pipeline owner. So long as the conveying of natural gas is being done for some commercial purpose, any purchases of goods and services directly used to support the conveyance are exempt from taxation.

Accordingly, we conclude that any sales of property or services directly used or consumed in the business of transmitting natural

gas by pipeline, whether the natural gas being transmitted in the pipeline is owned by the business owner or not, are exempt from the consumer sales tax under *W.Va.Code,* 11–15–9(7) [1985] and *W.Va.Code,* 11–15–9(g) [1987].

The Tax Commissioner's regulations, enacted in 1987, 1988, and 1989, were consistent with the definition of "transmission" contained in *W.Va.Code,* 11–15–2(r) [1987]. However, the 1992 regulations, specifically 110 C.S.R. 15, § 123.4.4 [1992], substantially modified the statutory definition of "transmission" to limit the application of the exemption to only those instances where natural gas was being "conveyed for others"— and conversely, specifically excluded from the exemption purchases used in "the passage or conveyance of ... natural gas ... by the owner thereof."

In view of the Legislature's plainly expressed intent that any purchase used in the business of the transmission of natural gas— regardless of who owns the natural gas being transmitted—be exempt from the consumer sales tax, we conclude that the Tax Commissioner's 1992 regulation is contrary to legislative command. The regulation is therefore unenforceable against CNG, and all purchases of goods and services used in CNG's transmission of company-owned natural gas between January 1, 1986, and September 30, 1993, were exempt from taxation.

### IV.

#### *Conclusion*

Based upon the foregoing, the January 22, 2001 order of the Circuit Court of Harrison County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and Remanded.