617 S.E.2d 531

**IPI, INC., Petitioner Below, Appellant**

v.

**Gregory A. BURTON, in His Capacity as Acting Commissioner, West Virginia Bureau of Employment Programs, Workers' Compensation Division, and West Virginia Division of Transportation, Division of Highways, Respondents Below, Appellees.**

No. 31858.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2005.

Decided May 16, 2005.

Dissenting Opinion of Justice Starcher July 14, 2005.

---

Kenneth E. Webb, Jr., Esq., Jennifer L. Dowdy, Esq., Bowles Rice McDavid Graff & Love, Charleston, West Virginia, Attorneys for Appellant.

William L. Ballard, Esq., Larry M. Bonham, Esq., Legal Services Division, Charleston, West Virginia, Attorney for Bureau of Employment Programs.

MAYNARD, Justice:

Appellant IPI, Inc. appeals the September 19, 2003, order of the Circuit Court of Kanawha County that upheld a May 22, 2001, order of the Commissioner of the West Virginia Bureau of Employment Programs Workers' Compensation Division. The Commissioner's order adopted the recommended decision of the Workers' Compensation Division Hearing Examiner that IPI, Inc. is the successor to North American Construction, Inc. and, as successor, is liable for the workers' compensation debt resulting from the reclassification and delinquencies of North American Construction, Inc. and its predecessor company, North American, Inc. After reviewing the arguments of the parties, the record below, and the applicable law, we reverse the circuit court.

## I.

### STATEMENT OF FACTS

Appellant IPI, Inc. is a West Virginia corporation which was incorporated on February 3, 1998, and is currently a subscriber to the West Virginia Workers' Compensation Fund. IPI was formed by Julia Dawn Taylor who is the corporation's sole shareholder. Mrs. Taylor's husband, Matthew J. Taylor (hereafter "Taylor") is president of IPI. IPI is in the business of residential, commercial, and industrial painting.

IPI was informed by a notice of reclassification, notice of succession, and notice of delinquency, dated April 24, 2000, that Appellee Workers' Compensation Division (hereafter "the Division")[1] found IPI to be the successor to the liability of North American Construction, Inc. (hereafter "North American") pursuant to W.Va.Code § 23-2-14 (1999).[2] North American was co-owned by Taylor and Joseph Morris and became a subscriber to the Workers' Compensation system in 1996. In 1997, Taylor discovered that North American was seriously delinquent in the payment of monies owed to First National Bank of Ronceverte and the Workers' Compensation Division as well as several other entities. Joseph Morris ultimately pled guilty to various charges relating to these financial delinquencies. Thereafter, Morris transferred North American stock to Taylor, giving Taylor control of the business. Taylor subsequently shut down North American.

In December 1997, First National Bank of Ronceverte (hereafter "the bank") won a default judgment against North American, Joseph Morris, and Taylor in the amount of $463,773.00 with interest at the rate of 10% from the entry of judgment until paid, and

---

1. Effective July 1, 2003, the Division was reorganized and reconstituted by the Legislature as the Workers' Compensation Commission. *See* W.Va. Code § 23-1-1 (2003).

2. This code section was amended in 2003. The amendment did not change the language at issue in this case. Accordingly, we will hereafter quote from, and cite to, the 2003 version of the code section.

perfected judgment liens against their real and personal property. To satisfy part of the judgment owed the bank, Taylor, with the bank's permission, sold North American's real property, at a value of approximately $125,000.00. In April 1998, IPI entered into an equipment lease agreement with North American Development, Inc.[3] wherein IPI agreed to lease some of North American's equipment. Taylor signed this contract on behalf of both IPI and North American Development, Inc.

The Division ultimately reclassified North American from small sheet metal building erection to the painting of steel and other high rise structures.[4] As a result of this reclassification, in addition to the reclassification of North American's predecessor business,[5] North American, Inc., North American was found to be delinquent in its payment of Workers' Compensation premiums to the Division. Because the Division determined that IPI is North American's successor, it found that IPI owes the Division $865,486.57 which wholly comprises the delinquencies of North American and its predecessor.

After receiving the notice of reclassification, notice of succession, and notice of delinquency, IPI protested the findings to the Division. The Hearing Examiner, after holding hearings in which evidence was adduced, issued a recommended decision of April 19, 2001, in which he found, *inter alia,* that IPI is a successor to North American and, as its successor, is liable for debt in the amount of $865,486.57. The Hearing Examiner's recommended decision was affirmed by the Workers' Compensation Commissioner[6] and the Circuit Court of Kanawha County which

3. North American Development, Inc. was formed in 1996 as a holding company for North American.

4. An employee of the Workers' Compensation Division testified in the hearing before the Division Hearing Examiner below that the Division recognizes 93 separate worker's compensation rates. The rate charged to an individual employer is based on that employer's placement in one of the approximately 252 different employer classifications recognized by the Division. The employee further testified that "[t]he governing class system basically states that the classification assigned to a business shall be the highest

adopted the Division's findings of fact and conclusions of law.

## II.

## STANDARD OF REVIEW

In *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995), this Court set forth the extent of its review of a circuit court's order that affirmed the findings of a hearing examiner or administrative law judge as follows:

> [I]n reviewing an ALJ's decision that was affirmed by the circuit court, this Court accords deference to the findings of fact made below. This Court reviews decisions of the circuit [court] under the same standard as that by which the circuit [court] reviews the decision of the ALJ. We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts.... We review *de novo* the conclusions of law and application of law to the facts.

## III.

## DISCUSSION

The legal standard governing whether a new employer is a successor to a predecessor employer for liability purposes under workers' compensation law is found in W.Va.Code § 23–2–14(b) (2003)[7] as follows:

> Notwithstanding any provisions of section five-a [§ 23–2–5a] of this article to the contrary, in the event that a new employer acquires by sale or other transfer or assumes all or substantially all of a predecessor employer's assets:

rated exposure that is a normal general part of their business operations." *See also* W.Va.Code § 23–2–4(a) (2005).

5. North American was found by the Division to be the successor to North American, Inc., formerly North American Sanding and Painting, which was owned by Taylor and Joseph Morris.

6. The Commissioner's order adopted in its entirety the findings and conclusions of the Hearing Examiner's recommended decision.

7. *See* note 2, *supra.*

(1) Any liens for payments owed to the commission for premium taxes, premium deposits, interest or other payments owed to the commission by the predecessor employer shall be extended to the successor employer;

(2) Any liens held by the commission against the predecessor employer's property shall be extended to all of the assets of the successor employer; and

(3) Liens acquired in the manner described in subdivisions (1) and (2) of this subsection are enforceable by the commission to the same extent as provided for the enforcement of liens against the predecessor employer in section five-a [§ 23-2-5a] of this article.

According to W.Va.Code § 23-2-14(e),

As used in this article, the term "assets" means all property of whatever type in which the employer has an interest including, but not limited to, goodwill, business assets, customers, clients, contracts, access to leases such as the right to sublease, assignment of contracts for the sale of products, operations, stock of goods or inventory, accounts receivable, equipment or transfer of substantially all of its employees.

Finally, subdivision (f) of W.Va.Code § 23-2-14 provides,

The transfer of any assets of the employer is presumed to be a transfer of all or substantially all of the assets if the transfer affects the employer's capacity to do business. The presumption can be overcome upon petition presented and an administrative hearing in accordance with section seventeen [§ 23-2-17] of this article.

The Hearing Examiner based his recommended decision that IPI is North American's successor on the fact that IPI leased from North American "a substantial portion" of North American's equipment; IPI acquired at least three key management employees of the ten employees who worked for North American at the time North American ceased operations; IPI completed the work on a contract entered into but left unfinished by North American; IPI, in the year it began operations, had job contracts with eight separate entities of which four were previous customers of North American; and Taylor, through correspondence, attempted to receive favorable consideration for IPI from former North American customers and held IPI out to be a successor to North American.

IPI, in challenging the finding that it is North American's successor, first asserts that it never acquired a majority of North American's equipment much less substantially all of it. IPI also disputes the Hearing Examiner's reliance on the finding that three "key management employees" transferred from North American to IPI. According to IPI, there was no evidence below that two of these three employees were key management employees of either North American or IPI. Further, says IPI, this finding is irrelevant because nowhere does the statutory scheme differentiate key employees from regular employees. IPI also refutes the Hearing Examiner's dependence on several letters signed by Taylor in which he stated that IPI would continue the projects of North American using its personnel and equipment, and that he would assume its liabilities. According to IPI, Taylor's representations are legally insignificant because there is no statutory provision that makes the assumption of obligations legally relevant to the question of successor liability.

The crucial inquiry in determining whether IPI is the successor to North American for workers' compensation liability purposes is whether IPI acquired "substantially all" of North American's assets. It is not claimed that IPI acquired all of North American's assets. Therefore, under W.Va.Code § 23-2-14(b), IPI can be found to succeed to North American's liability only if IPI assumed "substantially all" of North American's assets.

■ This Court has held that "[e]ach word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syllabus Point 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984). Sever-

al courts have defined the phrase "substantially all." In *Atmel Corp. v. Information Storage Devices, Inc.*, 997 F.Supp. 1210, 1229 (N.D.Cal.1998), the court defined "substantially all" as used in a patent to mean "all but an insignificant amount." Similarly, in *Ahlstrom Machinery, Inc. v. Clement*, 13 F.Supp.2d 45, 49 (D.D.C.1998), *affirmed, Kamyr, Inc. v. Clement*, 217 F.3d 860 (Fed.Cir. 1999), the phrase "substantially all," again as used in claim of patent, was construed to mean "largely but not wholly that which is specified." We believe that the definition stated by the *Atmel* court as "all but an insignificant amount" both accurately and clearly expresses the common and ordinary meaning of the phrase "substantially all." Accordingly, we hold that the phrase "substantially all" in W.Va.Code § 23–2–14(b) (2003), regarding the determination of successor liability under the Workers' Compensation Act, means all but an insignificant amount.

We note also that this definition is consistent with how the phrase "substantially all" has been applied by several courts in various contexts. *See Continental Can v. Chicago Truck Drivers, et al.*, 916 F.2d 1154, 1158 (7th Cir.1990) (noting that "*[a]ll* of the [tax] regulations we could find ... quantify this phrase ["substantially all"] as 85% or more"); *Central States, et al., Pension Fund v. Bellmont*, 610 F.Supp. 1505, 1511 (N.D.Ind.1985), *affirmed*, 788 F.2d 428 (7th Cir.1986) (concluding that "[t]he 85% figure ... comports with the common meaning of 'substantially all' " in a trucking industry exemption); *Theurer v. Bd. of Review Indus. Com'n*, 725 P.2d 1338 (Utah 1986) (holding that newly practicing dentist's acquisition of 75% of former dentist's assets is not "substantially all" assets of former dentist); *James v. McCoy Mfg. Co.*, 431 So.2d 1147, 1149 (Ala.1983) (concluding that 65% was insufficient to constitute "substantially all the assets" within context of unemployment statute for purposes of calculating corporation's contribution to state unemployment compensation fund); *Auclair Transp. v. Riley*, 96 N.H. 1, 69 A.2d 861, 863 (N.H.1949) (finding that word "substantially" in unemployment compensation act "cannot be less than 90% [of the whole] in the ordinary situation").

■ Application of the above definition of "substantially all" to the instant facts leads this Court to conclude that IPI did not acquire substantially all of North American's assets pursuant to W.Va.Code § 23–2–14. We recognize the Hearing Examiner's findings that IPI completed the only contract left uncompleted by North American and that Taylor on several occasions held IPI out to be North American's successor. Significantly, however, IPI did not acquire North American's real estate which was valued at approximately $125,000.00. Also, IPI acquired only three of the ten employees of North American, a number which certainly does not constitute substantially all of North American's employees. Further, as noted by IPI, even though the three employees acquired by IPI are characterized as "key management employees" by the Hearing Examiner, W.Va. Code § 23–2–14(e) does not distinguish between types of employees in its listing of categories of assets.

Finally, the Hearing Examiner found that IPI acquired a "substantial portion" of North American's equipment by comparing the list of equipment leased by IPI on "Schedule A" attached to the lease to the Division's Exhibit 14 which is a list of equipment owned by North American. However, as asserted by IPI, a "substantial portion" of the whole is not the same as "substantially all" of the whole. While a "substantial portion" may mean "a majority of" or "most of," it does not necessarily indicate "all but an insignificant amount." Schedule A, by this Court's count, lists approximately 115 sundry items used in offices or in the painting business acquired by IPI out of a total of approximately 182 such items owned by North American and listed on ·Exhibit 14. A comparison of the two lists appears to indicate, among other things, that IPI leased approximately seven trucks from North American, while approximately ten trucks were retained by North American. Also, several trailers, campers, and a boat owned by North American were not acquired by IPI. In addition, while IPI acquired six "Louisville pick boards" from North American, sixteen such pick boards were retained by North American along with all of North American's step and extension

ladders. Moreover, while IPI acquired various pieces of office equipment such as a computer hard drive, laser printer, office tables and chairs, typewriter, two office trailers, and a fax machine, it did not acquire phones, a copier, refrigerator, microwave, television, video cassette recorder, monitors, and key pads. This Court concludes from this that while, as found by the Hearing Examiner, IPI acquired a substantial portion of North American's equipment, it clearly did not assume all but an insignificant amount of the equipment.

■ The Division asserts that the applicable statute does not require that substantially all of each category of the assets owned by the predecessor employer be transferred. Rather, a sale of any of the assets shall be presumed to be substantially all of the assets if the transfer affects the employer's capacity to do business. In addition, says the Division, W.Va.Code § 23–2–14(e) provides that the types of assets listed are not inclusive. Therefore, the Division can consider all of the assets transferred within the totality of the circumstances in its successorship analysis. While these assertions are not necessarily incorrect, the fact remains that an employer can rebut a presumption of successorship by showing that it did not acquire or assume all or substantially all of the predecessor employer's assets. *See Expedited Transp. Systems, Inc. v. Vieweg,* 207 W.Va. 90, 529 S.E.2d 110 (2000) (holding that when presumption is used to find successor liability and employer requests a hearing to rebut the presumption, the Division must grant such a hearing). In the instant case, we find that IPI rebutted the presumption of successorship by showing that, although it may have acquired a substantial portion of North American's assets, it did not acquire all but an insignificant amount of the assets. Specifically, IPI did not acquire North Ameri-

can's real estate, or substantially all of North American's employees and equipment.

■■ This Court has held that,

Interpretations as to the meaning and application of workers' compensation statutes rendered by the Workers' Compensation Commissioner, as the governmental official charged with the administration and enforcement of the workers' compensation statutory law of this State, pursuant to W.Va.Code § 23–1–1 (1997) (Repl.Vol. 1998), should be accorded deference if such interpretations are consistent with the legislation's plain meaning and ordinary construction.

Syllabus Point 4, *State ex rel. ACF Industries v. Vieweg,* 204 W.Va. 525, 514 S.E.2d 176 (1999). Thus, the Division's construction of W.Va.Code § 23–2–14 should only be accorded deference if it is consistent with that statute's plain meaning. We also have recognized that "[t]he judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute." Syllabus Point 5, *CNG Transmission Corp. v. Craig,* 211 W.Va. 170, 564 S.E.2d 167 (2002). In the instant case, we reject the Division's application of W.Va. Code § 23–2–14 to the instant facts as inconsistent with that statute's clear language.[8]

In summary, we have determined that the "substantially all" test for successor liability in W.Va.Code § 23–2–14 means "all but an insignificant amount." The application of this standard to the instant facts indicates that a significant amount of North American's assets were not acquired by IPI including real estate, employees, and equipment. Therefore, because IPI did not acquire substantially all of North American's assets, it is not a successor employer to North American pursuant to W.Va.Code § 23–2–14. Accordingly, the circuit court's order that affirmed the ruling of the Commissioner and the Hearing Examiner that IPI is a successor to North American is reversed.[9]

8. The Division further emphasizes that even though IPI did not acquire all of North American's equipment, the evidence indicates that all of the equipment remained in Taylor's possession. We believe this to be legally insignificant, however, since the operative test is the portion of

North American's equipment actually acquired by IPI.

9. IPI also asserted that the circuit court committed reversible error by misapplying the statutory provisions governing reclassification and by accepting the findings of the Hearing Examiner

## IV.

## CONCLUSION

For the reasons stated above, the September 19, 2003, order of the Circuit Court of Kanawha County that ruled that IPI is a successor to North American is reversed.

Reversed.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

STARCHER, J., dissenting:

(Filed July 14, 2005)

The facts of this case demonstrate, in a nutshell, why our workers' compensation system is on financially tenuous ground. A historical problem in West Virginia has been the use by employers of "shell" corporations which are created, pay little or no workers' compensation premiums, and then go out of business a year or two later. The Workers' Compensation Commissioner and companies that do pay their compensation premiums are then left to foot the bill for injured workers. Shortly thereafter, the first shell corporation is replaced by another shell corporation with the same corporate officers using the same equipment and same employees to do the same work, and the cycle repeats itself endlessly.

The Legislature has tried to fix this problem. I dissent because the majority opinion undoes the Legislature's work, and strips the Workers' Compensation Commissioner of the statutory authority to put the workers' compensation system back on the right financial track and make *all* employers pay their fair share.

North American, Inc. and North American Construction, Inc., were both owned equally by Joseph Morris and Matthew Taylor, and had common officers. Both companies used the same equipment, employees, business location and had the same clients. In June 1992, North American, Inc. filed an application for workers' compensation coverage stating the type of business as "putting up metal and aluminum storage buildings." In June 1996, North American Construction filed an application which stated that the type of business was "small building erection." These were both lies. Both North American companies were actually incorporated as industrial painting businesses, and had the company's owners been honest, their correct business classification would have resulted in the companies paying much higher workers compensation premiums.

In October 1997, the First National Bank of Ronceverte sued both North American companies, and Mr. Morris and Mr. Taylor individually, claiming a default had occurred on certain loans. At this point, Mr. Taylor allegedly became suspicious of Mr. Morris' activities, and upon investigation discovered the companies had serious delinquencies to the bank, the Workers' Compensation Division, the Internal Revenue Service, the Department of Tax and Revenue, and to others. Mr. Morris' and Mr. Taylor's activities also apparently came to the attention of federal investigators.

Shortly thereafter, Mr. Morris transferred enough stock to Mr. Taylor to give him an 80% share of the stock in the North American companies. Mr. Taylor asserts that at this point he calculated that the companies could not be financially salvaged, and made a decision to shut the companies down effective January 1, 1998.

Two months later, Julia Taylor, Mr. Taylor's wife, formed a new corporation called IPI, Inc., with Mrs. Taylor owning 100% of the stock and Mr. Taylor acting as president. IPI was incorporated as an industrial painting business, and had the same general manager, foreman and office manager/bookkeeper as the North American companies. The new corporation continued to paint for the same customers. Mr. Taylor represented to an industry trade group that IPI "utilized the same employees and equipment" as North American, because North American had "ceased all business activities, and I reincorporated under the name IPI." IPI retains all personnel, equipment and projects of the

---

absent further analysis. Because of our disposition of IPI's first assignment of error, these alleged errors are now moot.

former North American. IPI "leased" all of its equipment—trucks, power washers, fax machines, air compressors, safes, paint guns, trailers, etc.—from North American. However, not all of North American's property was leased by IPI; that which was not leased remained in the physical possession of Mr. Taylor.

The record shows the financial relationships of these companies were substantially entangled, with each company agreeing to pay debts of one of the others, including IPI. All of these financial transactions were calculated to benefit Mr. Taylor. For instance, the bank won a default judgment against the North American companies and Mr. Taylor in the amount of $463,773.00. To partially satisfy this judgment, Mr. Taylor used North American Development to sell certain North American real estate for $125,000.00. Similarly, North American bought equipment from W.W. Graingers, but in March 1998 Mr. Taylor sent a letter to W.W. Graingers saying "North American, Inc. has been changed to IPI, Inc.," and asking the vendor to "send us a new statement so we can clear the balance on this account." Furthermore, IPI loaned Mr. Taylor $25,000.00 for legal fees to defend his criminal charges related to the North American companies.

In sum, the facts show that IPI acquired substantially all of the goodwill, customers, clients, contracts, leases, operations, stock of goods, inventory, equipment and employees that existed at the time that the North American companies ceased doing business. Only the cash and outstanding accounts receivable were not transferred, because there was apparently no cash or accounts receivable in existence. The acquisition caused North American to be incapable of continuing its business.

The North American companies had racked up an $865,486.57 delinquency to the Workers' Compensation Commissioner through their misconduct. The average citizen can see that Mr. Taylor created IPI as a way to keep doing business as usual, but to avoid responsibility for the workers' compensation delinquency and other debts. The majority opinion gives the Workers' Compensation Act a ridiculously narrow construction, finding that the phrase "substantially all" in *W.Va.Code*, 23–2–14(b) [2003] means "all" and nothing less. And because IPI was not a mirror image of the North American companies, the majority opinion determined that IPI was not a successor liable for the North American companies' workers' compensation debts.

I would have held Mr. Taylor's feet to the fire and permitted the Commissioner to extract payment for that delinquency from IPI's corporate hide. Instead, the majority opinion has dropped Mr. Taylor's $865,000.00 debt into the lap of State taxpayers and honest, premium-paying businesses. I therefore respectfully dissent.