**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2015 Term**

_____

No. 14-1045

_____

**FILED**

**February 26, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA EX REL. THE WEST VIRGINIA SECONDARY
SCHOOL ACTIVITIES COMMISSION;
DAVID COTTRELL, President;
MIKE ARBOGAST, Vice President;
GARY RAY, Executive Director;
RICK JONES, Member;
DAN ERENRICH, Member;
EDDIE CAMPBELL, Member;
GREGORY PRUDICH, Member;
CRAIG LEE LOY, Member;
GREG WEBB, Member;
ROBERT DUNLEVEY, Member;
RONALD SPENCER, Member,
Petitioners**

**v.**

**THE HONORABLE DAVID W. HUMMEL, Judge of the Circuit Court of Marshall
County;
PAMELA F., Individually, and as Parent and Legal Guardian of D.W., a Minor,
Respondents**

_____

**Petition for Writ of Prohibition**

**WRIT DENIED**

_____

**Submitted: February 4, 2015**
**Filed: February 26, 2015**

**William R. Wooton, Esq.**
**Wooton & Wooton**
**Beckley, WV**
**Counsel for the Petitioners**

**James G. Bordas, Jr., Esq.**
**Michelle Marinacci, Esq.**
**Bordas & Bordas, PLLC.**
**Wheeling, WV**
**Counsel for the Respondents**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion and is joined therein by CHIEF JUSTICE WORKMAN.**

**SYLLABUS BY THE COURT**

1. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court." Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)

2. "Decisions properly within the purview of the legislative grant of authority to the West Virginia Secondary Schools Activities Commission under West Virginia Code § 18–2–25 (2008), such as the application of WVSSAC Rules and the review of calls or rulings made by game officials, are not subject to judicial review." Syl. Pt. 3, *State ex rel. W.Va. Secondary Sch. Activity Comm'n v. Webster*, 228 W.Va. 75, 717 S.E.2d 859 (2011).

3. "As a general rule courts should not interfere with the internal affairs of school activities commissions or associations." Syl. Pt. 2, *State ex rel. W.Va. Secondary Sch. Activities Comm'n v. Oakley*, 152 W.Va. 533, 164 S.E.2d 775 (1968).

4. "The judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute" Syl. Pt. 5, *CNG Transmission Corp v. Craig*, 211 W.Va. 170, 564 S.E.2d 167 (2002).

5. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970).

6. "It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority." Syl. Pt. 3, *Rowe v. W.Va. Dep't of Corr.*, 170 W.Va. 230, 292 S.E.2d 650 (1982).

7. "The word 'shall', in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." *See* Syl. Pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969).

**Justice Ketchum:**

Petitioner, the West Virginia Secondary School Activities Commission (SSAC), seeks a writ of prohibition to halt enforcement of an October 3, 2014, order of the Circuit Court of Marshall County. The circuit court enjoined the SSAC from enforcing its penalty against a high school student-athlete. The student-athlete was ejected from a football game, resulting in his automatic suspension from the next game.

By statute, the Legislature required the SSAC to provide a "proper review procedure." The circuit court found the SSAC violated this statutory requirement by adopting a regulation prohibiting review of ejections and refusing review of its penalty against the student-athlete. The SSAC argues that the circuit court erred because circuit courts have no review over its internal affairs and because the "non-review of ejections rule" is not unconstitutional. The student-athlete responds that the SSAC's regulations may be constitutional, but they also must comply with state statutes, which the non-review of ejections rule fails to do.

Upon review, we find that the SSAC's non-review of ejections rule violates the Legislature's requirement that the SSAC provide a proper review procedure. Because the circuit court's order was not in error, we deny the requested writ of prohibition.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

This dispute has its origin in a high school football game played on September 19, 2014. During the game, a referee flagged one of the student-athletes,

1

D.W., for allegedly committing a flagrant personal foul.[1] According to the referee's report to the SSAC, the student-athlete, while lying on his back on the ground, "drew back his right leg and delivered an upward kick striking the helmet/face mask of the Defender."

The referee ejected the student-athlete from the game. As required by the SSAC's rules, the referee completed a detailed report of the incident and submitted it to the SSAC within twenty-four hours. He also submitted the report to the student-athlete's principal. Because the SSAC does not allow participation in the game following an ejection, he was suspended from playing in the next game, scheduled for September 26th. The September 19th ejection and the suspension from the September 26th game operated as a single punishment.

In the week leading up to the September 26th game, the student-athlete sought administrative review from the SSAC. He hoped to use video-evidence to show that the alleged kick to the opposing player's face (or any other misconduct) did not occur. The student-athlete made multiple attempts that week to get the SSAC to review its punishment against him.

The SSAC is required by state statute to provide a proper review procedure.[2] Nevertheless, it refused to review the student-athlete's administrative appeal. The SSAC instead invoked its non-review of ejections rule, which states: "The protest of

---

[1] Because the student-athlete is a minor, we follow our traditional practice in cases involving sensitive facts and use only his initials.

[2] *See* W.VA. CODE § 18-2-25 [1967]. We discuss this statute in greater detail in our analysis.

a[n] . . . ejection will not be allowed. Accordingly, the Board of Directors is not authorized to order . . . ejections to be reconsidered." *W.VA. C.S.R.* § 127-3-15.3 [2014]. The SSAC did not review the video-evidence to determine whether the student-athlete's punishment was proper.

As a last resort, the student-athlete (by his mother, Pamela F.)[3] sought a temporary restraining order and preliminary injunction from the Circuit Court of Marshall County, alleging the SSAC's non-review of ejections rule was not enforceable.[4] The student-athlete argued before the circuit court that the SSAC's non-review of ejections rule violated the Legislature's requirement that the SSAC provide a proper review procedure. The SSAC responded that its non-review of ejections rule is enforceable because it is not unconstitutional. The SSAC did not address the student-athlete's statutory argument.

Before ruling on the matter, the judge stated, "I'm not making any ruling that anything is unconstitutional." The judge also said, "I am not reversing a referee. I'm not considering the call that the referee did." Likewise, the circuit court's order granting the preliminary injunction states: "[t]his Court is not, and has no intention of, examining

---

[3] Because of Pamela F.'s relation to the student-athlete, a minor, we refer to her using her first name and last initial.

[4] The circuit court had two separate hearings on this matter. The first hearing, scheduled for September 26th, was on whether to grant the requested temporary restraining order, preventing the SSAC from enforcing its punishment. The circuit court granted the requested temporary restraining order, which, by its own terms, expired on October 2, 2014. The second hearing, scheduled for October 2, 2014, was on whether to grant the requested preliminary injunction, preventing the SSAC from enforcing its punishment. The parties' arguments remained virtually the same at both hearings.

the constitutionality of [the non-review of ejections rule]. . . . [t]his Court is not, and has no intention of, reviewing the ejection call made by the game official on September 19, 2014." The circuit court limited its analysis to whether the non-review of ejections rule complied with a statute that required the SSAC to provide a proper review procedure.

The circuit court found that the SSAC's non-review of ejections rule violates the Legislature's requirement that the SSAC provide a proper review procedure. It then granted an injunction against the SSAC's enforcement of its punishment. The SSAC then petitioned this Court for a writ of prohibition.

## II.
## STANDARD OF REVIEW

When considering a petition for a writ of prohibition, we have held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

4

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

Furthermore, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court." Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977). Rather, the circuit court's abuse of powers must be "so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate[.]" Syl. Pt. 2, in part, *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973).

**III.**
**ANALYSIS**

West Virginia Code § 18-2-25 (1967), provides, in pertinent part, that: "[t]he rules and regulations of the West Virginia secondary school activities commission *shall contain a provision for a proper review procedure* and review board and be promulgated in accordance with the provisions of [the State Administrative Procedures Act]." (Emphasis added). At issue is whether this statute was violated by the SSAC's regulation, which states, in pertinent part, "[t]he protest of a[n] . . . ejection will not be allowed. Accordingly, the Board of Directors is not authorized to order . . . ejections to be reconsidered." *W.Va. C.S.R.* § 127-3-15.3 [2014].

The SSAC argues that circuit courts must stay out of its internal affairs and that its non-review of ejections rule is not unconstitutional. We agree with the SSAC on these two points, but we disagree that they serve as a proper basis for finding that the circuit court's order (which centered upon whether the regulation complied with statute) was error. Rather, we agree with the circuit court that the SSAC's non-review of

5

ejections rule is a direct violation of West Virginia Code § 18-2-25's requirement that the SSAC provide a proper review procedure. Therefore, we deny the requested writ of prohibition.

### A.  Judicial review over the SSAC

The SSAC argues that circuit courts do not have judicial review over its internal affairs. We generally agree. We have dealt with the frustrating scenario on many occasions where a student-athlete who is displeased with an on-the-field ejection petitions his/her local court for a temporary restraining order and a preliminary injunction, thereby preventing the SSAC from enforcing its decision. Of course, the student-athlete in this scenario can rely on the sports season being over by the time the temporary restraining order and preliminary injunction are finally litigated. In this way, student-athletes have literally been using circuit courts to run out the clock on unfavorable decisions by the SSAC.

However, the student-athlete's argument posits a different scenario in which a referee ejects a football player, #21 for example, from a football game for fighting but there is clear video-evidence showing that #21 was thirty yards away from the fight and that the real fighter was #12. If the referee in this scenario refuses to reverse his call and he submits an ejection report to the SSAC against #21 (who is innocent), any penalty arising out of the ejection is automatic and will not be reviewable under the SSAC's non-review of ejections rule. Under the non-review of ejections rule, the SSAC will refuse to discuss the matter with the player or consider his video-evidence.

6

We have held that "[d]ecisions *properly within the purview of the legislative grant of authority* to the West Virginia Secondary Schools Activities Commission under West Virginia Code § 18–2–25 (2008), such as the application of WVSSAC Rules and the review of calls or rulings made by game officials, are not subject to judicial review." Syl. Pt. 3, *State ex rel. W.Va. Secondary Sch. Activity Comm'n v. Webster*, 228 W.Va. 75, 717 S.E.2d 859 (2011) (emphasis added). "*Coincident with the legislative grant of authority to the SSAC* . . . matters falling within the province of the SSAC's bailiwick are, as a rule, beyond the purview of court interference." *Id.*, 228 W.Va. at 83-84, 717 S.E.2d at 867-68. Furthermore, "[a]s a general rule courts should not interfere with the internal affairs of school activities commissions or associations." Syl. Pt. 2, *State ex rel. W.Va. Secondary Sch. Activities Comm'n v. Oakley*, 152 W.Va. 533, 164 S.E.2d 775 (1968).

We have made clear that *if* the SSAC does not exceed its constitutional or statutory authority, circuit courts must stay out of the SSAC's internal affairs. However, the SSAC *must* comply with all applicable statutory and constitutional provisions. *See Mayo v. W.Va. Secondary Sch. Activities Comm'n*, 223 W.Va. 88, 95 n.17, 672 S.E.2d 224, 231 n.17 (2008) ("[A]n SSAC rule is subject to challenge, like all properly promulgated legislative rules, on grounds that it exceeds constitutional or statutory authority and for being arbitrary or capricious."); *Hamilton v. W.Va. Secondary Sch. Activities Comm'n*, 182 W.Va. 158, 386 S.E.2d 656 (1989) (finding the SSAC's rule unenforceable under *W.VA. CODE* § 18-2-25). Likewise, "the authority of a court to inject itself into an SSAC matter arises when that body exceeds its legitimate rule-making

7

authority," and judicial review of an SSAC matter is permitted when there is a "well-founded challenge to a legislative rule promulgated by the SSAC." *Webster*, 228 W.Va. at 84, 717 S.E.2d at 868.

The SSAC argues that this Court in *Webster* approved the SSAC's non-review of ejections rule as proper. That is untrue. Not once in *Webster* did we discuss, or even mention, the non-review of ejections rule. Rather, in *Webster*, we examined the narrow issue of whether a circuit court erred in finding that a referee's ejection of a football player violated the rules of the National Federation of State High School Associations. *Id.*, 228 W.Va. at 81, 717 S.E.2d at 865. We specifically stated in *Webster,* "[c]ritically, no one has suggested that the SSAC rules . . . are an unreasonable exercise of the legislative grant of rulemaking authority to the SSAC. . . . Because no allegation was ever asserted by the respondent players that the rules were an unreasonable exercise of the SSAC's authority, the trial court had no basis for injecting itself into this matter." *Id.* 228 W.Va. at 84, 717 S.E.2d at 868. Here, the student-athlete asserts that the SSAC's non-review of ejections rule was an unreasonable exercise of the legislative grant of authority under West Virginia Code § 18-2-25. Therefore, the SSAC cannot rely on *Webster* to find error in the circuit court's order based on West Virginia Code § 18-2-25.

We have stressed before and will stress again that when the SSAC is in compliance with all applicable constitutional and statutory provisions, circuit courts must stay out of the SSAC's internal affairs. That includes, among other things, review of calls by game-day officials, rulings by the SSAC, and how the SSAC interprets and

8

implements its own rules. However, the SSAC does not have a blank check to ignore its statutory obligations. Circuit courts have judicial review over the SSAC matters only to the extent that the SSAC exceeds either its statutory or constitutional authority.

### B. The SSAC did not exceed its constitutional authority

The SSAC argues that its non-review of ejections rule is not unconstitutional. We agree. In fact, we have already examined and ruled on this very issue. *Mayo,* 223 W.Va 88, 672 S.E.2d 224 (holding non-review of ejections rule is constitutionally sound). *See also Bailey v. Truby*, 174 W.Va. 8, 21, 321 S.E.2d 302, 316 (1984) ("There is no fundamental or constitutional right to participate in nonacademic extracurricular activities in the 'liberty' or 'property' interest sense for purposes of due process analysis.").

This Court's position that student-athletes have no constitutionally-protected due process interest in playing sports is supported by the overwhelming majority of courts in this country. *See, e.g.*, *Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996); *Davenport v. Randolph Cnty. Bd. of Educ*, 730 F.2d 1395, 1397 (11th Cir. 1984); *Niles v. Univ. Interscholastic League*, 715 F.2d 1027 (5th Cir. 1983); *In re U.S. ex rel. Mo. Sate High Sch. Activities Ass'n*, 682 F.2d 147 (8th Cir. 1982); *Herbert v. Ventetuolo*, 638 F.2d 5 (1st Cir. 1981); *Ademek v. Penn. Interscholastic Athletic Ass'n Inc.*, 57 Pa.Commw. 261, 262, 426 A.2d 1206, 1207 (1981); *NCAA v. Gillard*, 352 So. 2d 1072, 1081 (Miss. 1977); *Whipple v. Or. Sch. Activities Ass'n*, 52 Or.App. 419, 423, 629 P.2d 384, 386 (1981); *Caso v. N.Y. Pub. High Sch. Athletic Ass'n*, 78 A.D.2d 41, 46, 434 N.Y.S.2d 60, 64 (1980); *Bruce v. S.C. High Sch. League*, 258 S.C. 546, 551-52, 189

9

S.E.2d 817, 819 (1972). *See also* Walter T. Champion, Jr., *Due Process, Equal Protection, and State Action*, Fundamentals of Sports Law § 12:5 (2014) (discussing the constitutionality of the adverse actions of an athletic association).

The SSAC argues that the circuit court's order "is directly contrary" to our decision in *Mayo*, which held that the SSAC's adoption and enforcement of its non-review of ejections rule is constitutionally sound. *See Mayo*, 223 W.Va. at 93, 672 S.E.2d at 229. However, the SSAC conveniently fails to mention that the circuit court's order was based on whether the non-review of ejections rule violated West Virginia Code § 18-2-25, a statute. The circuit court's order stated: "[t]his Court is not, and has no intention of, examining the constitutionality of [the non-review of ejections rule]." In *Mayo*, we did not rule on, or even mention whether the non-review of ejections rule exceeded the SSAC's statutory authority. The SSAC is subject to both the Constitution *and* statutes. The non-review of ejections rule is not unconstitutional. Therefore, we proceed to determine whether the SSAC's non-review of ejections rule exceeded the SSAC's statutory authority. *See Jones v. W.Va. Bd. of Educ.*, 218 W.Va. 52, 61, 622 S.E.2d 289, 298 (2005).

### C. The SSAC exceeded its statutory authority

The Legislature granted the SSAC authority to regulate interscholastic athletic events in West Virginia Code § 18-2-25. In that same statute, the Legislature plainly stated, in pertinent part:

> The rules and regulations of the West Virginia secondary school activities commission *shall contain a provision for a proper review procedure and review board*

10

> *and be promulgated in accordance with the provisions of* [*the State Administrative Procedures Act*], *but shall, in all instances be subject to the prior approval of the state board. . . . The West Virginia secondary school activities commission shall promulgate reasonable rules and regulations providing for the control, supervision and regulation of the interscholastic athletic events*[.]

(Emphasis added).

Accordingly, the SSAC's own regulations properly recognize: "*[a]ll cases involving disciplinary action* against member schools, coaches, students, team attendants, or officials may be protested in accordance with § 127-6." *W.VA. C.S.R.* § 127-4-3.10 [2014] (emphasis added). The SSAC's regulations also require investigation and adjudication of all reports of unsportsmanship action. *W.VA. C.S.R.* § 127-4-3.8 provides, in pertinent part:

> Unsportsmanship action must be reported in detail to the WVSSAC. A copy of the complaint must also be filed with the principal of the school involved. Each principal involved shall report such information or answers to the report as they deem appropriate. *Upon receipt of all reports, the Executive Director and/or the Board of Directors of the WVSSAC shall investigate and adjudicate such reports*[.]

*Id.* (emphasis added).

Nevertheless, the SSAC's non-review of ejections rule prohibits student-athletes, coaches, and principals from protesting a student-athlete's ejection from a sports event, and the rule does not allow for an ejection to be reconsidered. West Virginia Code of State Rule § 127-3-15.3, provides: "The protest of a contest or ejection will not be allowed. Accordingly, the Board of Directors is not authorized to order contests to be replayed or ejections to be reconsidered." When the student-athlete in this case sought to

11

present video-evidence to protest his ejection and suspension for alleged unsportsmanlike conduct, the SSAC responded that it provided no review procedure for the punishment it imposed against the student-athlete.

The SSAC construes West Virginia Code § 18-2-25 (which requires a proper review procedure) to allow it to not provide a review procedure for ejections. However, "[t]he judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute." Syl. Pt. 5, *CNG Transmission Corp v. Craig*, 211 W.Va. 170, 564 S.E.2d 167 (2002). "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970). *See also*, Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

Similarly, "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Div*. v. *Pub. Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989). We have said, "[i]t is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, *an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory*

12

*authority.*" Syl. Pt. 3, *Rowe v. W.Va. Dep't of Corr.*, 170 W.Va. 230, 292 S.E.2d 650 (1982) (emphasis added). *See also Anderson & Anderson Contractors, Inc. v. Latimer*, 162 W.Va. 803, 807-08, 257 S.E.2d 878, 881 (1979) ("[T]he rules and regulations [of an agency] must be reasonable and conform to the laws enacted by the Legislature."). A regulation's validity under the statute it administers is not entitled to deference if the Legislature has spoken directly to the precise question at issue. *See* Syl. Pt. 3, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

The Legislature granted the SSAC no discretion on whether to provide a proper review procedure for ejections, as manifested by the word "shall" in West Virginia Code § 18-2-25. *See* Syl. Pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969) ("The word 'shall', in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation."). Furthermore, West Virginia Code § 18-2-25 contains no limiting language with which we can infer that the SSAC was allowed to exclude protests of ejections from review.

West Virginia Code § 18-2-25 is clear and unambiguous that the SSAC must provide a proper review procedure. By contrast, the SSAC's non-review of ejections rule prohibits any review for ejections. Therefore, when an ejection occurs, it is impossible for the SSAC to abide by both West Virginia Code § 18-2-25 and its non-review of ejections rule because one requires a review and the other prohibits review. Likewise, the non-review of ejections rule directly contradicts West Virginia Code § 18-2-25. The SSAC cannot adopt a regulation that is inconsistent with or alters its statutory

13

authority, and accordingly, West Virginia Code of State Rule § 127-3-15.3, the non-review of ejections rule is invalid and unenforceable.

The Legislature's requirement that the SSAC provide a review procedure for ejections is so clear that it is embodied in the SSAC's own regulations. For example, West Virginia Code of State Rule § 127-4-3.10 states, "*[a]ll cases involving disciplinary action* against member schools, coaches, students, team attendants, or officials may be protested in accordance with § 127-6." (Emphasis added). The SSAC also requires that a detailed report of *all cases of unsportsmanlike conduct* (including ejections) be investigated, adjudicated, and submitted to the student-athlete's principal, in which case the principal is given opportunity to reply to the report. *W.VA. C.S.R.* § 127-4-3.8. Simply, the SSAC's non-review of ejections rule is not only contrary to West Virginia Code § 18-2-25, but also to its own regulations, which recognize its obligation under state law to provide a review procedure for all disciplinary action. *See* Syl. Pt. 1, *State ex rel. Wilson v. Truby*, 167 W.Va. 179, 281 S.E.2d 231 (1981) ("An administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs.").

The SSAC argues that providing review of ejections could create the following problems: (1) making its own system vulnerable to the same abuse as that experienced in the circuit courts (*i.e.*, student-athletes getting a stay on valid punishments until the sports season is over); and (2) interfering with SSAC operations (*i.e.*, the administrative appeal would not be resolved by the time the next game was scheduled). We are sympathetic to these concerns. However, the SSAC has presented no evidence that student-athletes abuse the review procedure in states where they are entitled to a

14

review of ejections (*i.e.*, Virginia, Florida, Texas, Oregon, and South Dakota). The mere potential for abuse does not justify the SSAC failing to provide a review procedure when a statute requires it to do so.

More importantly, the SSAC can avoid interference with its operations by adopting a separate, informal review procedure for ejections that does not involve a hearing. The West Virginia Code has many examples of expedited, informal review procedures that do not involve formal hearings. For example, West Virginia Code § 18A-5-1a [2014] provides that when a student is accused of possessing a weapon on school grounds, the principal holds an informal hearing, allows the student to present evidence supporting his/her side of the story, and makes a decision on the matter that same day. In suspending students from its regular operations, schools are bound by the student's procedural due process rights.[5] Because student-athletes do not have a constitutionally-protected interest in playing high school sports, the SSAC would be even less restricted in adopting a similar, expedited and informal review for ejections.

The SSAC already has regulations in place that would be helpful to crafting an expedited, informal review procedure for ejections. For example, West Virginia Code of State Rule § 127-4-3.8 requires referees to submit a detailed report of any incident of unsportsmanlike conduct to the SSAC and the student-athlete's principal within twenty-four hours. Given the fact that the SSAC already has the referee's side of the story within a day of the incident, the SSAC could give the student-athlete a similar twenty-four hour

---

[5] *See Goss v. Lopez*, 419 U.S. 565, 574 (1975) (suspension from school is subject to student's procedural due process rights).

15

period to submit information supporting his/her side of the story. If the SSAC were to implement a similar informal procedure, it would be able to deliberate on the matter for an additional day, render a decision, and the dispute could be resolved within three days of the ejection.

Such a review procedure for ejections would satisfy the State Administrative Procedures Act. West Virginia Code § 18-2-25 requires that the SSAC provide a review procedure; it does not require a hearing. The SSAC would not violate the State Administrative Procedures Act by choosing to adopt a review procedure for ejections without a formal hearing. *See State ex rel. W.Va. Bd. of Educ. v. Perry*, 189 W.Va. 662, 665, 434 S.E.2d 22, 25 (1993) ("[T]he provisions in [the State Administrative Procedures Act], outlining the procedure for hearing contested cases do not create substantive rights [*e.g.,* right to a formal hearing], as such rights must exist either by statutory language creating an agency hearing, by the agency's rules and regulations, or by some constitutional command."). Accordingly, the SSAC's concern that a review of ejections would interfere with its operations is without merit.

West Virginia Code § 18-2-25, which states, in pertinent part: "[t]he rules and regulations of [the SSAC] shall contain a provision for a proper review procedure and review board and be promulgated in accordance with the [State Administrative Procedures Act]," requires the SSAC to provide a proper review procedure. Therefore, the SSAC's non-review of ejections rule, West Virginia Code of State Rule § 127-3-15.3, which states, "[t]he protest of a[n] . . . ejection will not be allowed. Accordingly, the Board of Directors is not authorized to order . . . ejections to be reconsidered," is a direct

16

violation of West Virginia Code § 18-2-25 insofar as it prohibits the protests of ejections. To comply with West Virginia Code § 18-2-25, the SSAC must either include the review of ejections in its general review procedure or adopt an expedited, informal review procedure for ejections. Exactly what the review procedure for ejections entails is within the SSAC's exclusive discretion *so long as* it does not exceed its statutory authority.

Lastly, an ejectment decision by the SSAC made in accordance with a proper review procedure is not subject to judicial review. *See Oakley*, 152 W.Va. at 538-39, 164 S.E.2d at 779 ("[T]he courts have no jurisdiction to entertain an appeal from the decisions of such school activities commissions or associations.").

## IV.
## CONCLUSION

Therefore, we find that the circuit court did not err in finding that the SSAC's non-review of ejections rule violated West Virginia Code § 18-2-25's requirement that the SSAC provide a proper review procedure. Accordingly, we deny the requested writ of prohibition.

Writ denied.

17